UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

TIMOTHY C. VISAGE,

        Plaintiff,

v.                                                          Case No. 3:16-cv-1494-J-32JRK

R.B. SELLERS, et al.,

        Defendants.

_____

**<u>ORDER</u>**

## I.   <u>Status</u>

Plaintiff, an inmate of the Florida penal system, initiated this case by filing a pro se Civil Rights Complaint (Doc. 1) pursuant to 42 U.S.C. § 1983.[1] Plaintiff names three Florida Department of Corrections correctional officers as Defendants: R.B. Sellers, S. Griffis, and Lt. Reeder. Plaintiff claims that Defendants violated his constitutional rights when they were deliberately indifferent to his serious medical needs while he was housed at Columbia Correctional Institution.[2] As relief, Plaintiff seeks compensatory and punitive damages and a declaration that Defendants violated his constitutional rights.

_____

[1] Plaintiff attaches exhibits to his Complaint (Docs. 1-1 – 1-13).

[2] Plaintiff is currently housed at Union Correctional Institution.

Before the Court are (1) Plaintiff's Motion for Summary Judgment (Doc. 28), supported by eighteen exhibits (Docs. 31-1 – 31-18); (2) Defendants' Motion for Summary Judgment (Doc. 36), supported by three exhibits (Docs. 36-1 – 36-7); and (3) Plaintiff's Motion to Strike Defendants' Exhibit "A" and "B" in Defendants' Response to Plaintiff's Motion for Summary Judgment (Doc. 41).[3] Defendants filed a Response to Plaintiff's Motion for Summary Judgment. See Doc. 40. Plaintiff responded to Defendants' Motion for Summary Judgment See Docs. 37, 38, 39. The Motions are ripe for judicial review.

## II.    Summary of Parties' Pertinent Filings

### A. Plaintiff's Complaint[4] and Motion for Summary Judgment

On March 4, 2016, Plaintiff underwent surgery on his right hand to treat a severe compound fracture and tendon rupture following an accident where his right index finger was nearly amputated. Following surgery, Plaintiff's right arm was placed in an arm sling strapped across his chest. Plaintiff was released from the hospital on March 5, 2016 and returned to his previously assigned upper bunk in Y

---

[3] Plaintiff requests that the Court strike Defendants' exhibits that they attach to their Response to Plaintiff's Motion for Summary Judgment (see Docs. 40-1, 40-2), which are Plaintiff's mental health records for March 8, 2016, and a medical report dated April 10, 2016. The Court declines to strike these documents.

[4] See Stallworth v. Tyson, 578 F. App'x 948, 950 (11th Cir. 2014) (citations omitted) ("The factual assertions that [Plaintiff] made in his amended complaint should have been given the same weight as an affidavit, because [Plaintiff] verified his complaint with an unsworn written declaration, made under penalty of perjury, and his complaint meets Rule 56's requirements for affidavits and sworn declarations.").

dorm. From March 5, 2016 until March 8, 2016, "Plaintiff spoke with several prison officials concerning the painful and dangerous ordeal of climbing to his assigned top bunk," considering he had to do so with an injured right hand. Doc. 1 at 7. According to Plaintiff, climbing to his top bunk with an injured hand was an "extremely painful ordeal" that caused him "appalling fear" that he "dreaded every time [officers] did 'count' in which Plaintiff had to climb up on his top bunk. Which was several times a day, and then to go to bed or even to just rest." Id.

Plaintiff alleges that on March 7, 2016, he spoke with Defendant Griffis, the Movement/Housing Officer, about needing a lower bunk. Id. at 10. He contends that on that day, he "fully informed" Griffis of his substantial risk of serious harm by explaining that he had slipped a few times while he was climbing up and down from his top bunk and was scared he might not be able to catch himself to avert a fall. Id. at 10-11. According to Plaintiff, Griffis told Plaintiff to "write her an Inmate Request." Doc. 29 at 4.

Plaintiff explains that on March 8, 2016, security escorted him to medical due to continued extreme pain from climbing to the top bunk and hitting his hand on the bed or wall. Doc. 29 at 3. According to Plaintiff, during his March 8, 2016 visit with medical, Nurse Lyons issued him a "temporary bottom bunk pass until the doctor could see Plaintiff." Doc. 29 at 3. Plaintiff claims that Nurse Lyons gave a copy of the March 8, 2016 lower bunk pass to Plaintiff and security. Id. Plaintiff alleges that he showed

Griffis his lower bunk pass on March 9, 2016, however, Griffis told Plaintiff that "she was busy and wasn't going to 'act' just because Plaintiff says so." Doc. 29 at 4.

According to Plaintiff, on March 9, 2016, he also showed the low bunk pass to Defendant Sellers, his Dorm Supervisor. Id. Plaintiff explains that Sellers knew Plaintiff was in an arm sling and that the top bunk lacked a support feature to help a one-armed inmate with climbing on and off the top bunk. Id. Plaintiff claims that despite Sellers' knowledge of this risk, Sellers refused to help him, informing Plaintiff that "it is not his job to move [Plaintiff]." Id.

Plaintiff claims that at some point between March 9, 2016 and March 13, 2016, he showed his low bunk pass to Defendant Reeder, the Administrative Lieutenant of the Special Housing Unit, and informed Reeder of his serious medical and safety need of being moved to a lower bunk. Doc. 1 at 11; Doc. 29 at 5. Plaintiff asserts that Reeder refused to move Plaintiff and explained that Plaintiff needed to "get with his dorm officers to handle the issue." Doc. 1 at 11-12; Doc. 29 at 5.

According to Plaintiff, on March 14, 2016, he "was attempting to climb down out of his assigned top bunk and his left[-]hand grip [failed] to support his [descent] and Plaintiff fell approximately 5 feet to the concrete floor." Doc. 1 at 9. Plaintiff explains that he primarily landed on his lower back, "but his head hit the floor and [he] was momentarily rendered unconscious." Id. He states that another inmate witnessed the fall and alerted Defendant Sellers who contacted medical. Id.

4

While not clearly articulated in his Complaint, Plaintiff argues in his Brief in Support of Plaintiff's Motion for Summary Judgment (Doc. 30) that he is raising two claims for relief premised upon Defendants' actions and inactions: (1) deliberate indifference to unsafe prison conditions for allegedly forcing Plaintiff to climb up and down from a top bunk with a severely injured right arm, and (2) deliberate indifference to a serious medical need by failing to move Plaintiff to a "medically prescribed bottom bunk." See generally Doc. 30.

As a result of Defendants' inactions, Plaintiff alleges that he suffered head pain, lower back pain, and pain in his left arm. Id. Further, he states that he "was placed in a wheelchair due to inability to walk or apply pressure to [his] left foot. Extreme pain shoots from his left foot to lower back with applied pressure [and an i]nability walk." Id. He asserts that he "endured extreme painful therapy for the next several months progressing from use of wheelchair, to left side crutch[,] to present walking with painful gait." Id. He states that as a result of Defendants' actions and inactions, he suffered serious injuries that have reduced his quality of life and subjected him to unnecessary pain. Id. at 16.

Plaintiff moves for summary judgment realleging the allegations in his Complaint and arguing there are no genuine issues of material fact as to Defendants' deliberate indifference to his safety and medical needs. See Docs. 28, 29, 30,32, 33. He attaches several exhibits, including a copy of his March 8, 2016 low bunk pass and his medical records. See Docs. 31-1 – 31-18. Plaintiff also filed a Declaration in Support of

5

Plaintiff's Motion for Summary Judgment (Doc. 29), a Brief in Support of Plaintiff's Motion for Summary Judgment (Doc. 30), a Statement of Undisputed Facts (Doc. 32), and Plaintiff's Motion for Supplemental Pleading of Plaintiff's Motion for Summary Judgment (Doc. 33). Defendants' responded. <u>See</u> Doc. 40.

**B. Defendants' Motion for Summary Judgment**

In their Motion, Defendants do not acknowledge that Plaintiff raises a claim of deliberate indifference to unsafe prison conditions, but only reference that Plaintiff is raising an Eighth Amendment claim for deliberate indifference to a serious medical need. <u>See</u> Doc. 36 at 2. Defendants argue that they are entitled to summary judgment on this allegation because: (1) Plaintiff failed to exhaust his administrative remedies; (2) Defendants are entitled to Eleventh Amendment immunity; (3) Defendants are entitled to qualified immunity; and (4) Plaintiff cannot sue Defendants in their individual capacity for compensatory or punitive damages absent a physical injury that is more than <u>de minimis</u>. <u>See generally</u> Doc. 36.

Defendants submit Dr. Kalem Santiago's Declaration in support of their Motion. <u>See</u> Doc. 36-2. In pertinent part, Dr. Santiago's Declaration states:

> This inmate's medical records reflect that he was taken to Memorial Hospital of Jacksonville due to a laceration on his right index finger on March 4, 2016.
>
> . . .
>
> Plaintiff's Chronological Record of Health Care from March 5, 2014, indicates that when he returned from the Memorial Hospital of Jacksonville, no injuries were noted

during transport. The inmate arrived with four prescriptions attached to his chart. The prescriptions were placed on the doctor's desk and the inmate was released to security for housing. Plaintiff's vitals were taken and follow-up was scheduled with Dr. Ong on March 16, 2016, at the Reception and Medical Center for removal of the sutures to his index finger. Plaintiff later complained of pain and was given Ibuprofen as well as two other medications. He was also given an arm sling.

On March 7, Plaintiff again complained of pain. He was prescribed Keflex, Excedrin, Calcium, and Toradol. On March 9, 2016, Plaintiff again complained of pain and throbbing. An assessment of his finger was completed. Plaintiff was advised to elevate his hand and wear his sling consistently. Plaintiff admitted he had bumped his hand on solid objects several times and it was noted he had been to medical without his sling on multiple occasions. Plaintiff continued to complain of increased pain and reported that the 600 mg of Ibuprofen he had been prescribed was not effective.

On March 10, 2016, Plaintiff again complained of severe hand pain and was prescribed additional pain medication.

On March 14, 2016, Plaintiff complained of lower back pain, neck pain, and decreased lower limb function due to allegedly falling from his bunk. Plaintiff claimed that he hit his head and lower back and blacked out. However, no injuries were visible. No bumps were observed at the locations of the alleged injuries. As a precautionary measure, Plaintiff was prescribed Lortab, x-rays were ordered, and a cervical collar was issued to him as was a low bunk pass. Plaintiff was advised to continue taking Tramadol and Ibuprofen.

On March 21, 2016, Plaintiff complained he was unable to walk but was able to stand up immediately and take steps forward. Plaintiff was notified that all x-rays were normal and the doctor did not order a wheelchair or

cane due to no injury.

On March 22, 2016, Plaintiff claimed an inability to walk on his left leg.

According to his Chronological Record of Health, his pain may have been caused by a muscle spasm. Plaintiff was issued a left-sided crutch per his request. Plaintiff was told to exercise his lower limbs and continue taking his medications. The Chronological Record of Health Care reflects Plaintiff was wearing a soft cast on his right hand and forearm that day.

On April 10, 2016, Plaintiff[']s Chronological Record of Health Care states, "This I/M was issued (1) crutch to assist with balance and ambulation following an unwitnessed fall from a top bunk. c/o pain left foot unable to bear full weight 4/8/12 seen by Doctor. On 4-10-16 there are 3 witness statements related to inmate[']s physical activity & exercise where he was observed by medical staff & security related to his improved mobility. I/M called to medical and explained to I/M why the assistive device was no longer needed."

In sum, Plaintiff[']s medical records contradict his allegations that he hit his head and lower back on March 14, 2016. Upon examination, there was simply no indication that he had suffered any injury.

As previously mentioned, Plaintiff[']s medical record reflects a low bunk pass was issued on March 14, 2016. There is no record of a low bunk pass being issued before then. When a pass is issued, a notation is made in the inmate's chart, a copy of the pass is placed in the inmate's record, and then medical staff must make an entry into the prison's computer system indicating the pass was issued that day. In this case, no pass dated March 8, 2016, appears in the inmate's record or in the computer system. The only pass on record, the only one documented in Plaintiff[']s chart, is the pass issued on March 14, 2016.

Plaintiff has been provided regular medical care upon request. There is absolutely nothing in his medical records to indicate he suffered any injury on March 14, 2016. Plaintiff[']s medical records reflect no sign of any injury, whatsoever, on that date.

Doc. 36-2 (citations to attachments omitted). Plaintiff responded to Defendants' arguments by generally reasserting the allegations in his Complaint. <u>See generally</u> Docs. 37, 38, 39.

## III.   <u>Standard of Review</u>

"'Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.'" <u>Hinkle v. Midland Credit Mgmt., Inc.</u>, 827 F.3d 1295, 1300 (11th Cir. 2016) (quoting <u>Jurich v. Compass Marine, Inc.</u>, 764 F.3d 1302, 1304 (11th Cir. 2014)); <u>see</u> Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Bowen v. Manheim Remarketing, Inc.</u>, 882 F.3d 1358, 1362 (11th Cir. 2018) (quotations and citation omitted).

If the movant satisfies the burden of production showing that there is no genuine issue of fact, "the nonmoving party must present evidence beyond the pleadings showing that a reasonable jury could find in its favor." <u>Shiver v. Chertoff</u>, 549 F.3d 1342, 1343 (11th Cir. 2008) (quotation omitted). [The Court] draw[s] "all factual inferences in a light most favorable to the non-moving party." <u>Id.</u>

<u>Winborn v. Supreme Beverage Co. Inc.</u>, 572 F. App'x 672, 674 (11th Cir. 2014) (per curiam).

"[W]hen the moving party has carried its burden under Rule 56(c), its opponent

must do more than simply show that there is some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986) (footnote and citation omitted). "'A mere scintilla of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party.'" <u>Loren v. Sasser</u>, 309 F.3d 1296, 1302 (11th Cir. 2002) (quoting <u>Walker v. Darby</u>, 911 F.2d 1573, 1577 (11th Cir.1990) (internal quotations omitted)). "The principles governing summary judgment do not change when the parties file cross-motions for summary judgment. When faced with cross-motions, the Court must determine whether either of the parties deserves judgment as a matter of law on the undisputed facts." <u>T-Mobile S. LLC v. City of Jacksonville, Fla.</u>, 564 F. Supp. 2d 1337, 1340 (M.D. Fla. 2008).

## IV.  <u>Analysis</u>

### A. Exhaustion

Defendants assert that Plaintiff failed to exhaust his administrative remedies. Doc. 36 at 8. Plaintiff asserts that he did exhaust his administrative remedies and attaches copies of his grievances. <u>See</u> Doc. 1 at 3; Doc. 1-12. Defendants previously raised this argument in their Motion to Dismiss. <u>See</u> Doc. 14. Upon a thorough review of the record, the Court denied this argument. <u>See</u> Doc. 17. Thereafter, the Court denied Defendants' Motion for Reconsideration, finding Plaintiff properly proceeded through Florida's prison grievance procedure. <u>See</u> Doc. 23. Defendants' arguments here are essentially the same as those which the Court already denied. Thus, the Court

denies these claims for the same reasons previously stated.

**B. Eleventh Amendment Immunity**

Defendants contend that they are entitled to Eleventh Amendment immunity to the extent Plaintiff is seeking damages against them in their official capacities. Doc. 36 at 12-13. Defendants also raised this claim in their Motion to Dismiss. <u>See</u> Doc. 14. Plaintiff responded that he is not suing Defendants in their official capacity for monetary damages. <u>See</u> Doc. 16. Further, in response to Defendants' Motion for Summary Judgment, Plaintiff reasserts that he is not suing Defendants in their official capacity. <u>See</u> Doc. 37 at 2. Thus, the Court denies this issue as moot.

**C. Qualified Immunity**

Defendants allege that they are entitled to qualified immunity from monetary damages sought against them in their individual capacities. Doc. 36 at 13-14. Because Defendants' Motion for Summary Judgment only references Plaintiff's claim of deliberate indifference to a serious medical need, the Court assumes Defendants do not assert the defense of qualified immunity to Plaintiff's claim of deliberate indifference to his health and safety.

> A government official asserting a qualified immunity defense bears the initial burden of showing "he was acting within his discretionary authority." <u>Skop v. City of Atlanta</u>, 485 F.3d 1130, 1136 (11th Cir. 2007). After the official makes this showing, the burden shifts to the plaintiff to show that "(1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." <u>Holloman ex rel. Holloman v. Harland</u>, 370 F.3d 1252, 1264 (11th Cir. 2004).

11

<u>Valderrama v. Rousseau</u>, 780 F.3d 1108, 1112 (11th Cir. 2015); <u>see</u> <u>Simmons v.</u> <u>Bradshaw</u>, 879 F.3d 1157, 1162 (11th Cir. 2018). "'Both elements of this test must be satisfied for an official to lose qualified immunity, and this two-prong inquiry may be done in whatever order is deemed appropriate for the case.'" <u>May v. City of Nahunta,</u> <u>Ga.</u>, 846 F.3d 1320, 1327 (11th Cir. 2017) (quoting <u>Grider v. City of Auburn, Ala.</u>, 618 F.3d 1240, 1254 (11th Cir. 2010)). "Qualified immunity protects all but the plainly incompetent or those who knowingly violate federal law; it does not extend to one who knew or reasonably should have known that his or her actions would violate the plaintiff's federal rights." <u>Gaines v. Wardynski</u>, 871 F.3d 1203, 1207 (11th Cir. 2017) (citation omitted).

### i. Discretionary Authority

There is no dispute that Defendants were acting within the scope of their discretionary authority at all times relative to this action. Consequently, the burden shifts to Plaintiff to demonstrate that Defendants are not entitled to qualified immunity.

### ii. Whether Defendants Violated a Constitutional Right

In order to prove an Eighth Amendment claim of deliberate indifference to a serious medical need, a prisoner must: (1) "satisfy the objective component by showing that [he] had a serious medical need"; (2) "satisfy the subjective component by showing that the prison official acted with deliberate indifference to [his] serious medical need";

and (3) "show that the injury was caused by the defendant's wrongful conduct." Goebert v. Lee Cty., 510 F.3d 1312, 1326 (11th Cir. 2007). As to the first, objective component, a medical need is serious if it "has been diagnosed by a physician as mandating treatment or [is] one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Id. (quotation omitted). In either case, the medical need must be "one that, if left unattended, 'poses a substantial risk of serious harm.'" Farrow v. West, 320 F.3d 1235, 1246 (11th Cir. 2003) (quoting Farmer Brennan, 511 U.S. 825, 834 (1994)).

Under the second, subjective component, the Eleventh Circuit Court of Appeals has consistently required that "a defendant know of and disregard an excessive risk to an inmate's health and safety." Haney v. City of Cumming, 69 F.3d 1098, 1102 (11th Cir. 1995). The subjective component therefore requires an inmate to prove: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." Melton v. Abston, 841 F.3d 1207, 1223 (11th Cir. 2016). "Conduct that is more than mere negligence includes: (1) grossly inadequate care; (2) a decision to take an easier but less efficacious course of treatment; and (3) medical care that is so cursory as to amount to no treatment at all." Bingham v. Thomas, 654 F.3d 1171, 1176 (11th Cir. 2011). Additionally, a defendant who "delays necessary treatment for non-medical reasons" or "knowingly interfere[s] with a physician's prescribed course of treatment" may exhibit deliberate indifference. Id. (citations omitted). However, deliberate indifference is not established when an

13

inmate receives medical care, but "may have desired different modes of treatment."
Hamm v. DeKalb Cty., 774 F.2d 1567, 1575 (11th Cir. 1985).

According to Plaintiff, his hand injury impeded his ability to climb, reduced his coordination, and presented "a serious medical need [for] a bottom bunk." Doc. 1 at 8. Plaintiff's medical records show that he saw medical on March 7, 9, and 10, 2016, where he reported pain and throbbing in his hand, and explained that he had "bumped" his arm/hand on solid objects several times. See Docs. 1-5, 1-6. Medical personnel advised Plaintiff that he must elevate his hand and use a sling consistently. Id. Plaintiff further alleges that his medical need was so serious that medical personnel issued him a bottom bunk pass on March 8, 2016. See Doc. 1 at 7. Plaintiff alleges that Defendants were deliberately indifferent to his medical needs by ignoring the March 8, 2016 prescribed low bunk pass. Plaintiff attaches a copy of his March 8, 2016 low bunk pass as support. Doc. 1-3; Doc. 31-7.

Plaintiff further attaches Defendant Reeder's response to Plaintiff's request for interrogatories, in which Reeder outlines the procedure for moving an inmate to a lower bunk once a pass is issued. See Doc. 31-9 at 6. Reeder explained:

> The bottom bunk pass must be entered into the computer system by medical staff. If there is a delay, and the bottom bunk pass is not immediately entered into the computer system by medical staff, then the inmate who has been issued the bottom bunk pass must present the bottom bunk pass to prison officials before he can be moved to a bottom bunk.

Id.

14

Plaintiff asserts that on March 7, 2016, he spoke with Defendant Griffis about needing a lower bunk. Doc. 1 at 10. He contends that on that day, he "fully informed" Griffis of his serious medical need by explaining that he had slipped a few times while he was climbing up and down from his top bunk and was scared he might not be able to catch himself to avert a fall. Id. at 10-11. According to Plaintiff, Griffis told Plaintiff to "write her an Inmate Request." Doc. 29 at 4. Plaintiff states that after he was issued his March 8, 2016 low bunk pass, he showed Griffis his low bunk pass on March 9, 2016, however, Griffis told Plaintiff that "she was busy and wasn't going to 'act' just because Plaintiff says so." Doc. 29 at 4. Plaintiff alleges that Griffis was the Movement Officer on Y dorm and was in charge of moving inmates from top bunks to lower bunks. Id.

As to Defendant Sellers, Plaintiff alleges that he showed the low bunk pass to Sellers on March 9, 2016. Doc. 29 at 4. Plaintiff explains that Sellers knew Plaintiff was in an arm sling and that the top bunk lacks a support feature to help a one-armed inmate with climbing on and off the top bunk. Id. Plaintiff claims that despite Sellers' knowledge of this risk, Sellers refused to help him, informing Plaintiff that "it is not his job to move [Plaintiff]." Id. In his response to Plaintiff's request for admissions, Sellers admitted he observed Plaintiff's arm in a sling and acknowledged that Plaintiff consistently complained to him and other staff about being in great pain from climbing to the top bunk. See Doc. 31-6 at 2-3. Sellers stated that he was Plaintiff's supervisor while Plaintiff was in Y dorm. Id. Plaintiff alleges that Sellers' position as dorm

15

supervisor meant he "was the prison official involved with Plaintiff on a[n] every day basis." Doc. 1 at 14.

As to Defendant Reeder, Plaintiff claims that at some point between March 9, 2016 and March 13, 2016, he showed his low bunk pass to Reeder who refused to move Plaintiff and explained that Plaintiff needed to "get with his dorm officers to handle the issue." Doc. 1 at 11-12; Doc. 29 at 5. Plaintiff alleges that Reeder saw Plaintiff's arm in a sling and saw the surgical pins protruding from Plaintiff's right index finger. Doc. 1 at 8-9. Plaintiff states that he told Reeder about his fear of continuing to climb up and down to his assigned top bunk and explained in detail the pain he felt. Id. Plaintiff claims that Reeder had actual knowledge of Plaintiff's serious medical need and was deliberately indifferent to Plaintiff's medical need. Id. Plaintiff alleges that Defendants' deliberate indifference resulted in him falling from his top bunk on March 14, 2016 and suffering undue pain and injuries.

Defendants do not actually claim that Plaintiff fails to establish a violation of a constitutional right on the facts alleged. Instead, Defendants appear to maintain that Plaintiff was not issued a low bunk pass until March 14, 2016, thus, they cannot be held liable for any alleged failure to move Plaintiff to a lower bunk prior to March 14, 2016. Doc. 36 at 4. In support of this position, they provide a printout of their computer medical contacts log, which contains only one entry for a low bunk pass dated March 14, 2016. See Doc. 36-7. They also provide a copy of Plaintiff's mental

16

health/psychologist report dated March 8, 2016, which does not mention that a low bunk pass was issued on that date. See Doc. 40-1.

Nevertheless, the Court finds that Plaintiff has alleged that Defendants' conduct, if proven true, plausibly establishes a violation of Plaintiff's Eighth Amendment rights. He has provided a copy of a March 8, 2016 low bunk pass, creating at least a factual dispute of whether one was issued on that date. Though, Defendants, in their Response to Plaintiff's Motion for Summary Judgment, assert for the first time that Plaintiff is precluded from suing Reeder under the theory of respondeat superior, see Doc. 40 at 3, Plaintiff alleges that Reeder, as with Sellers and Griffis, had actual knowledge of Plaintiff's serious medical need and participated in the constitutional violation. As such, on this record, the Court finds that genuine issues of material fact remain. Consequently, Plaintiff satisfies his burden under the first prong of qualified immunity.

### iii. Whether the Constitutional Right was Clearly Established at the Time of the Violation

"A 'clearly established' right is one whose contours are fixed 'so clearly that a reasonable official would have understood his acts were unlawful.'" Coley v. Smith, 441 F. App'x 627, 628 (11th Cir. 2011).

> 'The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.' Saucier v. Katz, 533 U.S. 194, 202, 121 S. Ct. 2151, 2156 (2001). This Court has observed that

17

> "[a] government-officer defendant is entitled to qualified
> immunity unless, at the time of the incident, the preexisting
> law dictates, that is, truly compels, the conclusion for all
> reasonable similarly situated public officials that what [a]
> Defendant was doing violated [a] Plaintiff's federal rights in
> the circumstances." Marsh v. Butler Cnty., Ala., 268 F.3d
> 1014, 1030–31 (11th Cir.2001) (en banc) (alteration
> adopted) (quotation marks omitted), abrogated on other
> grounds by Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).

Davila v. Gladden, 777 F.3d 1198, 1210-11 (11th Cir. 2015). When determining whether a right is clearly established, this Court is bound by precedents of the Supreme Court, the Eleventh Circuit Court of Appeals, and the Supreme Court of Florida. See Coley, 441 F. App'x at 628–29 (quoting Jenkins by Hall v. Talladega City Bd. of Educ., 115 F.3d 821, 826 n. 4 (11th Cir.1997) (en banc)).

The question in this case is whether binding precedent in March 2016 gave Defendants fair warning that their conduct violated the Eighth Amendment. According to Plaintiff, the potential unconstitutional conduct here involves (1) Defendants requiring Plaintiff to subject himself to extreme pain when climbing up and down from his top bunk while in a full arm sling, and (2) Defendants' inaction when faced with Plaintiff's March 8, 2016 prescribed low bunk pass (i.e., failure to move Plaintiff to a low bunk or notify personnel responsible for cell assignments that Plaintiff's bunk assignment was contrary to his prescribed medical restriction). See Doc. 30 at 18.

Plaintiff cites to decisions of the Eleventh Circuit and the United State Supreme Court to support his position that his rights were clearly established. See Doc. 30 at

18-21. Plaintiff argues, in pertinent part:

> The Supreme Court's holding in <u>Estelle[v. Gamble</u>, 429 U.S. 97 (1976)] sets forth the general rule that "[d]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." <u>Id.</u> at 104 (internal quotation marks and citation omitted).

> The Eleventh Circuit has described the <u>Estelle</u> decision as "recogniz[ing] that the Eighth Amendment requires the government 'to provide medical care for those whom it is punishing by incarceration' precisely because the failure to do so 'may actually produce physical torture or a lingering death' or, '[i]n less serious cases, . . . may result in pain and suffering which no one suggests would serve any penological purpose.'" <u>McElligott v. Foley</u>, 182 F.3d 1248, 1257 (11th Cir.1999) (quoting <u>Estelle</u>, 429 U.S. at 10) (additional internal quotation marks omitted).

> In <u>Farmer v. Brennan</u>, 511 U.S. 825 (1994), the Court defined the term "[d]eliberate [i]ndifference" in the context of a prisoner's claim that prison officials violated the Eighth Amendment by their deliberate indifference to his safety (placing the transsexual prisoner in the general population, thereby failing to keep him from harm allegedly inflicted by other inmates). The <u>Farmer</u> Court held that Eighth Amendment liability requires actual awareness of a substantial risk of serious harm; thus, prison officials may be liable if they know that inmates face substantial risk of serious harm and disregard that risk by failing to take reasonable measures to abate it. 511 U.S. at 847.

> In <u>Goebert v. Lee Cnty.</u>, 510 F.3d 1312 (11th Cir. 2007), the Eleventh Circuit denied qualified immunity to a non-medical jail official (the jail's facility commander) who failed to respond to a pregnant inmate's complaint that she needed immediate medical care.

> The Eleventh Circuit held that four prior cases, <u>Harris v. Coweta County</u>, 21 F.3d 388, 394 (11th Cir. 1994);

> McElligott, 182 F.3d at 1260; Mandel v. Doe, 888 F.2d 783,
> 788–90 (11th Cir. 1989), and Carswell v. Bay Cnty., 854
> F.2d 454 (11th Cir. 1988), were sufficiently similar to have
> put the jail commander on notice that his actions or inaction
> violated Ms. Goebert's constitutional right to timely
> treatment of her serious medical needs.
>
> In Harris, the Eleventh Circuit held that "[i]naction
> in the face of a known serious medical need [and] a
> prescribed course of care . . . is not conduct that a sheriff
> could reasonably consider lawful." Harris, 21 F.3d at 394.

Doc. 30 at 19; see also Hall v. C.O. Moore, No. 3:14cv140/MCR/CJK, 2015 WL 9946410,

at *13 (N.D. Fla. Dec. 29, 2015), report and recommendation adopted, No.

3:14cv140/MCR/CJK, 2016 WL 394012 (N.D. Fla. Feb. 1, 2016).

Relying on this cited precedent, Plaintiff asserts that "given the abundance of

pre-existing case law . . . defining the parameters of deliberate indifference, Plaintiff

insists that the Defendants [cannot] claim to have lacked fair warning that their

conduct violated the Eighth Amendment." Doc. 30 at 20; see also Hall, 2015 WL

9946410, *14 (citing Gray ex. rel. Alexander v. Bostic, 458 F.3d 1295, 1306 (11th Cir.

2006) ("Even in the absence of factually similar case law, an official can have fair

warning that his conduct is unconstitutional when the constitutional violation is

obvious.")). He asserts that "the facts are that even if Defendants were to claim they

had not been advised of the need of a bottom bunk, the underlying medical condition

does not mean that a layman could not tell, from observing Plaintiff with a cast from

his hand all the way up to the top of his bicep, in an arm sling, that his ability to climb

was impaired to the point of it being a serious need to be relocated to a bottom bunk."

Doc. 30 at 20.

The Court finds there are material facts in dispute with respect to this issue. If the finder of fact agrees with Plaintiff, then Defendants violated clearly established law by requiring Plaintiff to engage in a medically-restricted activity that presented a risk of injury. Consequently, Defendants' request for qualified immunity is due to be denied.

**D. De Minimis Injuries**

Defendants assert that Plaintiff is precluded from suing them in their individual capacity for compensatory or punitive damages because Plaintiff's reported injuries from his March 14, 2016 fall are not more than de minimis. Doc. 36 at 14-17. In support of their allegation, Defendants rely on Dr. Santiago's Declaration, which provides that "Plaintiff's medical records contradict his allegations that he hit his head and lower back on March 14, 2016 . . . there was simply no indication that he suffered any injury." Doc. 36-2 at 6.

Plaintiff contends that on March 14, 2016, he was attempting to climb down from his top bunk when his left hand slipped, and he fell five feet to the concrete floor. Doc. 1 at 9. He alleges that his lower back sustained the majority of the impact and his head hit the floor and he was momentarily rendered unconscious. Id. The medical report from March 14, 2016 shows that Plaintiff complained of pain in his lower back, neck, and head. Doc. 1-7. He had reduced lower limb function, but there was "no deformity" detected on Plaintiff's back. Id. The physician ordered Plaintiff to wear a

cervical collar for forty-eight hours and to "continue low bunk pass" for an additional thirty days. Id. The physican also ordered "lumbar, pelvic, and neck" x-rays, which showed "no visible injury." Doc. 36-2. Plaintiff had a headache and was slurring his speech, though, no visible "bumps" were reported. Id.

The medical record from March 21, 2016 indicates that Plaintiff complained about his inability to walk due to pain in his hip and foot. Doc. 31-2 at 7. Medical personnel noted that Plaintiff was able to stand but when asked to take a few steps forward, Plaintiff stepped forward by placing his weight on his left "tip-toe." Id. Plaintiff requested crutches, but medical personnel noted that Plaintiff had a full cast on his right arm. Id.

The medical report from March 22, 2016 provides that Plaintiff again advised that he was unable to walk on his left leg. Doc. 31-2 at 8. During the exam, Plaintiff was sitting in a wheelchair[5] and was able to stand and limp. Id. There were no left foot deformities, but medical personnel noted that Plaintiff may have had a muscle spasm in his hamstring. Id. Plaintiff was issued a left crutch and was told to exercise his lower limbs. Id.

A medical report from April 8, 2016 indicates that Plaintiff was still complaining of left foot pain and difficulty standing up while showering. Doc. 31-2 at 9. Medical personnel recommended that Plaintiff use the handicap shower access if

---

[5] It is unclear when Plaintiff was issued the wheelchair.

possible. Id. The April 10, 2016 report shows that Plaintiff had improved mobility and he advised medical that he no longer needed his crutch. Doc. 10-2. However, in his Complaint, Plaintiff avers that he now walks with a "painful gait." Doc. 1 at 16.

Plaintiff suffered actual documented physical injuries for which he received medical treatment, and he avers that he suffered additional undocumented injuries. Considering the record and the facts in the light most favorable to Plaintiff, the Court finds genuine issues of material fact exist regarding the extent of Plaintiff's injuries. The Court, therefore, declines to find at this time that his injuries were de minimis.

## V.    **Conclusion**

Upon review of the record, the Court finds that none of the parties are entitled to summary judgment on Plaintiff's Eighth Amendment deliberate indifference claims.

Accordingly, it is

**ORDERED:**

1.    The parties' Motions for Summary Judgment (Docs. 28, 36) are **DENIED**.

2.    Plaintiff's Motion to Strike Defendants' Exhibit "A" and "B" in Defendants' Response to Plaintiff's Motion for Summary Judgment (Doc. 41) is **DENIED**.

3.    The parties shall confer in good faith regarding the possibility of settlement. By April 4, 2019, they shall notify the Court whether they have settled this case, and if not, whether they wish to have this case referred to a United States

Magistrate Judge for a settlement conference.

**DONE AND ORDERED** at Jacksonville, Florida, this 4th day of March, 2019.

TIMOTHY J. CORRIGAN
United States District Judge

Jax-7

C:
Timothy C. Visage, #098216
Damaris Esperanza Reynolds, Esq.